# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP7-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Michael J. Hicks, Attorney at Law: |
| | Office of Lawyer Regulation, Complainant-Respondent, |
| | v. |
| | Michael J. Hicks, Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST HICKS

| | |
|---|---|
| OPINION FILED: | February 17, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2014AP7-D

STATE OF WISCONSIN        :        IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Michael J. Hicks, Attorney at Law:**

**Office of Lawyer Regulation,**

       **Complainant-Respondent,**

   **v.**

**Michael J. Hicks,**

       **Respondent-Appellant.**

**FILED**

**FEB 17, 2016**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review the report of the referee, Attorney James J. Winiarski, who found that Attorney Michael J. Hicks had committed 35 counts of professional misconduct and recommended that Attorney Hicks' license to practice law in Wisconsin be suspended for a period of two years.

¶2 The first issue we must address is the status of Attorney Hicks' appeal and the nature of our review. After the referee filed his report and recommendation, Attorney Hicks

filed a notice of appeal on February 6, 2015. On that same date, pursuant to its standard practice, the clerk of this court issued a notice to the parties acknowledging the filing of the notice of appeal, informing Attorney Hicks of the need to file a statement on transcript, and advising him of the briefing schedule. Attorney Hicks did not file either a statement on transcript or an opening brief. On April 9, 2015, the clerk's office issued an order on behalf of the court advising Attorney Hicks that his opening brief was delinquent and that, unless he filed the opening brief or a motion for an extension of time within five days, the disciplinary case would be resolved summarily. Attorney Hicks did not respond. On June 15, 2015, the Office of Lawyer Regulation (OLR) formally moved for the dismissal of Attorney Hicks' appeal. Attorney Hicks still did not respond. Thus, despite being notified on multiple occasions that his failure to respond might result in the dismissal of his appeal and/or the court's consideration of the referee's report on a summary basis (without the filing of appellate briefs as if no appeal had been filed), Attorney Hicks still failed to file an opening brief or otherwise respond.

¶3 Appeals in attorney disciplinary cases are subject to the rules of appellate procedure for civil cases. Supreme Court Rule (SCR) 22.17(3). Sanctions for failing to comply with those rules are likewise available as they would be in other civil appeals. See Wis. Stat. § (Rule) 809.83(2); In re Disciplinary Proceeding Against Crandall, 2011 WI 21, ¶13, 332 Wis. 2d 698, 798 N.W.2d 183. Those sanctions include "dismissal of the

appeal, summary reversal, striking of a paper, imposition of a penalty or costs on a party or counsel, or other action as the court considers appropriate." Wis. Stat. § (Rule) 809.83(2).

¶4  In ordinary civil cases, dismissal of an appeal with prejudice is a drastic action because "in many cases it imposes a finality to both issues and claims." State v. Smythe, 225 Wis. 2d 456, 469, 592 N.W.2d 628 (1999).  When an ordinary civil appeal is dismissed by the court of appeals, the circuit court's final judgment or order stands without any consideration of the merits.  Consequently, this court has authorized dismissal of civil appeals only where the appellant "has demonstrated bad faith or egregious conduct, or there must be a common sense finding that the appeal has been abandoned." Id.

¶5  Whether Attorney Hicks' failure to file any brief in this court can be characterized as "egregious" or "bad faith" are issues we need not reach.  A stronger argument can be made that Attorney Hicks has abandoned his appeal.  In addition to the notice provided in the rules of appellate procedure that he must file a brief, see Wis. Stat. § (Rule) 809.19(1), he twice received notices from the clerk of this court that reminded him of his obligation to file a brief.  Indeed, the April 9, 2015 order issued through the clerk's office explicitly stated that his brief was delinquent and that he had five days to file his brief or to seek an extension.  That order did not spur Attorney Hicks to any action, even though it advised him that failure to comply would result in the court resolving his case in a summary manner.  Attorney Hicks' failure to take any action in the face

3

of the court's order is a clear indication that he had decided to abandon his appeal. That intention was confirmed when the OLR subsequently filed a motion to dismiss his appeal, and Attorney Hicks failed even to file a response to the motion. Thus, this court has received not one communication from Attorney Hicks since he filed his short notice of appeal. Common sense would seem to require characterizing this pattern of conduct as clearly demonstrating an intent to abandon the appeal.

¶6 At a minimum, Attorney Hicks has failed to file any brief even after being informed in April 2015 that this court would summarily resolve his case if he failed to file a brief within five days. His prolonged course of inaction and failure to communicate with this court constitutes a forfeiture of his right to file a brief, even if we do not formally dismiss his appeal.

¶7 Ultimately, we choose not to formally dismiss Attorney Hicks' appeal, but merely to proceed to consider the matter without the benefit of briefs. This choice, however, will have no real effect on how we proceed in this disciplinary case. In either case, because this is an attorney disciplinary matter that has come to us via a referee's report and recommendation rather than a lower court "judgment" that we could simply affirm without consideration of the merits, we must proceed to review the referee's report and recommendation on the merits. Because there are no briefs and no specific issues presented for our review, we will still proceed with our review as if no appeal

4

had been filed, which means that we will still review the referee's findings of fact and conclusions of law and will determine an appropriate level of discipline for any misconduct that is found. See SCR 22.17(2).[1]

¶8 We will affirm the referee's findings of fact unless they are found to be clearly erroneous, but we will review the referee's conclusions of law on a de novo basis. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. If professional misconduct is found, we will determine the appropriate level of discipline to impose given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶9 After reviewing this matter, we accept the referee's findings of fact and legal conclusions that Attorney Hicks committed 35 counts of professional misconduct. Given the pattern of Attorney Hicks' misconduct, the number of clients affected, and his cavalier attitude toward the lawyer regulation system and the resulting temporary suspensions of his license,

---

[1] SCR 22.17(2) states:

> If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

we determine that a two-year suspension of his license to practice law is appropriate. We further require Attorney Hicks to pay the costs of this disciplinary proceeding, which were $10,572.49 as of February 4, 2015.

¶10 Attorney Hicks was admitted to the practice of law in this state in June 1984. He most recently maintained a private law practice in West Allis.

¶11 Attorney Hicks has been the subject of professional discipline on one prior occasion. In 2012 he received a public reprimand after stipulating to nine counts of professional misconduct. In re Disciplinary Proceedings Against Hicks, 2012 WI 11, 338 Wis. 2d 558, 809 N.W.2d 33.

¶12 As the referee noted, there is a general pattern to Attorney Hicks' misconduct. His practice focused primarily on representing indigent defendants in criminal cases through appointments by the Office of the State Public Defender (SPD) or by a court. While Attorney Hicks would usually send an initial letter to the client notifying him/her of the appointment and his representation, he would largely ignore the client for extended periods of time. At times, Attorney Hicks would fail to follow through on necessary actions. At some point the OLR would receive a grievance, which they would send to Attorney Hicks for a written response. Attorney Hicks would either never respond, or he would provide an initial response that the OLR deemed inadequate and he would then fail to respond to the OLR's requests for further information.

¶13 On two occasions, the OLR moved for the temporary suspension of Attorney Hicks' license due to his willful failure to cooperate with the OLR's investigations. The first such motion was filed on June 14, 2012. This court then issued an order directing Attorney Hicks to show cause in writing by July 5, 2012, why his license should not be temporarily suspended. On July 17, 2012, Attorney Hicks filed a late response asserting that he had submitted a response to the grievance to the OLR. The OLR, however, stated that Attorney Hicks' response was insufficient and asked him to provide additional information. The OLR twice asked this court to postpone suspending Attorney Hicks' license to allow Attorney Hicks more time to provide a complete response to the OLR's requests for information. When the OLR reported that Attorney Hicks had failed to provide any additional information, this court finally temporarily suspended his license on September 27, 2012. Only after the temporary suspension of his license did Attorney Hicks submit a response to the grievance that provided the information the OLR was seeking. The court then reinstated Attorney Hicks' license on October 16, 2012.

¶14 The OLR was forced to file a second motion for temporary suspension on November 29, 2012, when Attorney Hicks failed to provided adequate responses in other grievance investigations. This court again issued an order to show cause. Attorney Hicks did not respond to the order, and this court then temporarily suspended his license again on February 12, 2013. Once that suspension had been ordered, Attorney Hicks began to

7

cooperate with the OLR's investigations. The OLR notified the court of that fact, and we reinstated Attorney Hicks' license to practice law in this state on March 11, 2013.

¶15 We now turn to the specific factual findings and conclusions of professional misconduct.

Representation of D.S.

¶16 In June 2011, Attorney Hicks was appointed to represent D.S. in a criminal case pending in the Milwaukee County circuit court. Attorney Hicks did meet with D.S. on at least two occasions and also met with D.S.'s wife to discuss various issues related to the defense of the case, including the execution of a search warrant and a possible motion to suppress evidence. Attorney Hicks and D.S. did not agree on several aspects of the motion. Attorney Hicks did file a motion to suppress, but the November 9, 2011 hearing on the motion was adjourned to January 26, 2012, because a witness for the state was not present. On November 9, 2011, and in a letter mailed the next day, D.S. asked Attorney Hicks to amend the suppression motion to add additional arguments, to subpoena additional witnesses for the hearing, and to investigate what D.S. believed was a faulty affidavit. The referee found that Attorney Hicks did not subpoena the additional witnesses requested by D.S. because he believed they would be detrimental to D.S.'s chance of obtaining suppression and that he did not pursue the additional arguments raised by D.S. because he believed them to be without merit. Attorney Hicks, however, did not communicate with D.S. between November 16, 2011, and the adjourned hearing

8

on January 26, 2012, when Attorney Hicks' motion to withdraw as D.S.'s counsel was granted by the circuit court.

¶17 On December 24, 2011, D.S. mailed a grievance letter to the OLR regarding Attorney Hicks' representation. The OLR twice communicated by letter with Attorney Hicks and asked him to respond to D.S.'s grievance. When Attorney Hicks did not respond, the OLR included Attorney Hicks' failure to cooperate as a basis for its first motion for a temporary suspension.

¶18 On the basis of these facts, the referee concluded that the OLR had not proven to the requisite standard of clear, satisfactory, and convincing evidence that Attorney Hicks had violated SCR 20:1.3[2] by failing to act with reasonable diligence. The referee also determined that the OLR had failed to prove violations of SCRs 20:1.4(a)(2) and (4)[3] and 20:1.4(b),[4] but he

---

[2] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[3] SCR 20:1.4(a), as relevant here, provides that a lawyer shall:

> (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
>
> (3) keep the client reasonably informed about the status of the matter; [and]
>
> (4) promptly comply with reasonable requests by the client for information.

[4] SCR 20:1.4(b) provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

9

did find that the OLR had proven a failure to communicate with D.S., in violation of SCR 20:1.4(a)(3). In addition, the referee concluded that Attorney Hicks' failure to file a response to D.S.'s grievance until this court had temporarily suspended his license had constituted a violation of SCR 22.03(2) and (6),[5] which are enforced via SCR 20:8.4(h).[6]

---

[5] SCR 22.03(2) and (6) provide:

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

. . . .

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[6] SCR 20:8.4(h) provides that it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

Representation of C.N.

¶19 In the fall of 2011, Attorney Hicks was appointed to represent client C.N. in a criminal appeal before the United States Court of Appeals for the Seventh Circuit. The opening brief in the appeal was due on November 14, 2011, but Attorney Hicks did not file any brief. Over the next six weeks, the Seventh Circuit issued two separate orders to show cause why C.N.'s appeal should not be dismissed for want of prosecution. Attorney Hicks did not respond to either of the two orders. Finally, in an order dated April 19, 2012, the chief judge of the Seventh Circuit discharged Attorney Hicks from C.N.'s appeal and ordered him to show cause why he should not be censured, fined, suspended, or disbarred from practicing in the Seventh Circuit due to his defiance of the court's orders and his abandonment of his client. The Seventh Circuit ultimately did disbar Attorney Hicks from appearing before it.

¶20 The OLR sent several letters to Attorney Hicks seeking a response regarding his actions in the C.N. representation. After the second OLR letter, Attorney Hicks asked for a short extension to submit his response, but he did not respond. After the third OLR letter, Attorney Hicks submitted another letter in which he merely asserted that his trial schedule had prevented him from completing his response, that he was working on compiling the necessary documents and information, and that he would try to complete his response as soon as he could. Attorney Hicks, however, never filed a substantive response. He

also did not respond to this court's order to show cause, which led to the second temporary suspension described above.

¶21 The referee determined that these facts supported three counts of misconduct. First, Attorney Hicks' failure to file a brief, seek an extension of time, or withdraw from representing C.N. had constituted a lack of diligence, in violation of SCR 20:1.3. The referee also concluded that Attorney Hicks had violated SCR 20:3.4(c)[7] by failing to respond to the Seventh Circuit's multiple orders to show cause. Finally, Attorney Hicks' failure to respond to the OLR's requests for a response had violated SCR 22.03(2) and (6), which are enforced via SCR 20:8.4(h).

Representation of R.C.

¶22 Attorney Hicks was appointed to represent R.C. in post-conviction proceedings or on appeal following R.C.'s criminal conviction. Attorney Hicks never had any contact with R.C. and failed to take any action on his behalf, causing R.C.'s appeal rights to expire without his consent. Ultimately, the SPD was forced to appoint new counsel for R.C.

¶23 The referee concluded that Attorney Hicks' lack of action during the representation of R.C. supported two counts of misconduct. First, Attorney Hicks failed to act with reasonable diligence, in violation of SCR 20:1.3. Second, Attorney Hicks'

---

[7] SCR 20:3.4(c) provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists."

12

lack of communication with his client constituted violations of SCRs 20:1.4(a)(2), (3), and (4) and 20:1.4(b).

Representation of L.B.

¶24 Attorney Hicks was also appointed to represent L.B. in criminal post-conviction matters. In a July 30, 2012 order, the circuit court ordered Attorney Hicks to file a brief in support of a previously filed post-conviction motion by September 4, 2012. Attorney Hicks failed to file the brief as ordered or to seek an extension of time prior to the temporary suspension of his license to practice law in Wisconsin. Indeed, except for an introductory letter to L.B. notifying him of Attorney Hicks' appointment, Attorney Hicks did not meet with L.B., respond to letters from L.B. requesting information about his case, or otherwise keep L.B. informed about the status of his case. When this court issued its first temporary suspension order against Attorney Hicks in September 2012, Attorney Hicks failed to notify L.B. of his suspension. Attorney Hicks also failed to notify the circuit court or opposing counsel. Finally, as occurred in other matters, Attorney Hicks promised the OLR that he would provide a response to L.B.'s grievance, but he failed to do so in a timely manner, responding only after this court had issued its second temporary suspension order in February 2013.

¶25 The referee concluded that the OLR had not proven to the requisite standard of proof that Attorney Hicks' failure to file a written request for an extension of time to file the post-hearing brief had constituted a violation of SCR 20:1.3.

13

The referee did find that Attorney Hicks had failed to properly communicate with L.B., in violation of SCRs 20:1.4(a)(2), (3), and (4) and 20:1.4(b). The referee also determined that Attorney Hicks' failure to notify his client of his temporary suspension had violated SCRs 22.26(1)(a) and (b)[8] and 20:3.4(c).[9] Similarly, Attorney Hicks' failure to notify the circuit court and opposing counsel of the temporary suspension violated SCRs 22.26(1)(c)[10] and 20:3.4(c). Finally, the referee concluded that

---

[8] SCR 22.26(1)(a) and (b) provide that, on or before the effective date of a license suspension, an attorney whose license is suspended shall "[n]otify by certified mail all clients being represented in pending matters of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation," and shall "[a]dvise the clients to seek legal advice of their choice elsewhere."

[9] As noted above, SCR 20:3.4(c) provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists." We question whether an attorney's failure to notify the attorney's client, opposing counsel, or a court of a temporary license suspension can constitute a violation of SCR 20:3.4, which bears the title "Fairness to opposing party and counsel." Multiple counts alleging violations of SCR 22.26 also alleged violations of SCR 20:3.4(c) in this matter. We need not decide this question, however, because the failure to comply with the obligations in SCR 22.26(1) to notify clients, opposing counsel, and courts of an attorney's temporary license suspension clearly constitutes a violation of SCR 20:8.4(f), which provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

[10] SCR 22.26(1)(c) provides that, on or before the effective date of a license suspension, an attorney whose license is suspended shall:

(continued)

14

Attorney Hicks' failure to respond to L.B.'s grievance until after this court had temporarily suspended his license had violated SCR 22.03(2) and (6), which are enforced via SCR 20:8.4(h).

Representation of E.B.

¶26 Attorney Hicks was representing E.B. at the time that this court imposed both of the temporary license suspensions (in September 2012 and in February 2013). The referee found that in neither instance did Attorney Hicks notify E.B. of the license suspension, in violation of SCRs 22.26(1)(a) and (b) and 20:3.4(c). The referee also found that Attorney Hicks failed to notify the court and opposing counsel of his two license suspensions, in violation of SCRs 22.26(1)(c) and 20:3.4(c). Finally, the referee determined that Attorney Hicks had failed to respond to E.B.'s grievance, in violation of SCR 22.03(2) and (6), which are enforced via SCR 20:8.4(h).

Representation of V.B.

¶27 In early December 2011, the United States District Court for the Eastern District of Wisconsin (the Eastern

---

Promptly provide written notification to the court or administrative agency and the attorney for each party in a matter pending before a court or administrative agency of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation. The notice shall identify the successor attorney of the attorney's client or, if there is none at the time notice is given, shall state the client's place of residence.

15

District) appointed Attorney Hicks to represent client V.B. in a criminal case pending in that court. V.B.'s sentencing was initially scheduled for February 28, 2012. Except for an introductory letter informing V.B. of his appointment and despite V.B.'s multiple attempts at contact, Attorney Hicks did not communicate with V.B. to discuss the case or prepare for the sentencing hearing, causing V.B. to send a letter to that effect to the federal court prior to the sentencing hearing.

¶28 Without consulting V.B., Attorney Hicks sent a letter to the court the day before the sentencing hearing, requesting an adjournment of the hearing. In his letter, although he had never spoken with V.B., Attorney Hicks stated that V.B. had "expressed some concerns about my representation of him, and I would like the opportunity to spend more time with [V.B.] to discuss his case and address his concerns." On the same day, Attorney Hicks sent a letter to V.B. notifying him that Attorney Hicks had unilaterally sought the adjournment of the sentencing hearing.

¶29 When Attorney Hicks still did not communicate with him regarding the sentencing hearing, V.B. sent another letter to the court asking for the appointment of new counsel. The court responded that it would address V.B.'s request at the sentencing hearing now scheduled for April 11, 2012. The day before the sentencing hearing, however, Attorney Hicks again requested an adjournment of the sentencing hearing without consulting or even notifying V.B. The referee also found that Attorney Hicks had

16

not done "any appreciable preparation for [V.B.'s] sentencing" by that time.

¶30 The court adjourned the sentencing hearing, but scheduled a status conference for April 19, 2012. Attorney Hicks unsuccessfully attempted to have this status conference adjourned. At the status conference, the Eastern District judge removed Attorney Hicks from V.B.'s case and appointed successor counsel.

¶31 V.B. filed a grievance with the OLR, which in turn notified Attorney Hicks and asked for a response in a letter dated July 24, 2012. Attorney Hicks requested an extension to respond, but he failed to provide any response until after this court had imposed the first temporary license suspension in September 2012. The OLR then requested additional information from Attorney Hicks regarding the V.B. representation. Long after the deadline for his supplemental response, Attorney Hicks faxed a letter to the OLR in late November 2012, claiming that his trial schedule had prevented him from responding, but assuring the OLR that he was compiling the documents and information the OLR requested and promising the OLR that he would complete the work on his supplemental response as soon as he could. Attorney Hicks, however, failed to provide any supplemental response until after this court had suspended his license a second time due to his willful failure to cooperate with the OLR's investigations.

¶32 Based on these facts, the referee concluded that Attorney Hicks had violated SCR 20:1.3 due to his failure to

17

prepare for and proceed with V.B.'s sentencing over a period of more than four months, which ultimately resulted in his removal from the case and the appointment of new counsel. Further, the referee determined that Attorney Hicks' failure to communicate with his client, both to advise the client of his actions and to respond to the client's multiple requests for information, had violated SCRs 20:1.4(a)(2), (3), and (4) and 20:1.4(b). In addition, the referee again ruled that Attorney Hicks had violated SCR 22.03(2) and (6), which are enforced via SCR 20:8.4(h), by failing to provide timely responses to the OLR's requests for information about V.B.'s grievance. The referee, however, did not find that Attorney Hicks had "engage[d] in conduct involving dishonesty, fraud, deceit or misrepresentation," in violation of SCR 20:8.4(c), as charged in the OLR's complaint.

Representation of J.M.

¶33 Attorney Hicks was appointed to represent client J.M. in May 2012. During the period of Attorney Hicks' first temporary suspension, he continued to make court appearances on J.M.'s behalf. He also failed to properly notify J.M. of his temporary suspensions. When the OLR notified Attorney Hicks of J.M.'s grievance and asked for certain information and documents in response to the grievance, Attorney Hicks failed to respond.

¶34 The referee concluded that Attorney Hicks' failure to notify J.M. of either of the temporary suspensions had violated SCRs 22.26(1)(a) and (b) and 20:3.4(c). He also determined that Attorney Hicks had violated SCRs 22.26(2) and 20:3.4(c) by

18

making court appearances on behalf of J.M. at a time when his license had been temporarily suspended.  Finally, Attorney Hicks' failure to respond to the OLR's request for information violated SCR 22.03(2) and (6), which are enforced via SCR 20:8.4(h).

Representations of K.L. and F.W.

¶35 In August 2011, the Eastern District appointed Attorney Hicks to represent K.L. in a criminal case pending in that court.

¶36 On April 19, 2012, while K.L's case was still pending, the Seventh Circuit removed Attorney Hicks as counsel for C.N., as noted above.  It also removed his name from the list of counsel eligible to receive appointments under the federal Criminal Justice Act and disbarred him from practicing before that court.  The Seventh Circuit's orders, however, did not remove him as counsel in federal district court cases where he had already been appointed, nor did they terminate his eligibility to practice in the Eastern District.

¶37 On July 25, 2012, K.L. sent a letter to the Eastern District requesting that the court advise him of the date and time for his next court appearance.  The court subsequently notified him that his change of plea hearing was scheduled for September 6, 2012.  Attorney Hicks, however, failed to appear for that hearing, which led to a lengthy expression of frustration by the district court judge.  The judge stated that this was the second time that Attorney Hicks had failed to appear for a district court hearing following his Seventh

19

Circuit disbarment, that Attorney Hicks apparently held the mistaken view that the Seventh Circuit disbarment had also suspended him from practicing before the Eastern District, and that Attorney Hicks had not bothered to seek clarification from the Eastern District before deciding not to appear for hearings in which he represented the defendant. The judge noted that Attorney Hicks' actions were causing disruptions with both the U.S. Marshal's Service, which brings defendants from custody to the district court for appearances, and the court's calendar. The judge indicated that he would hold Attorney Hicks responsible for some or all of the expenses connected with his failure to appear because Attorney Hicks had been "totally irresponsible in his obligations as an officer of this court in not communicating not only with the Court but more significantly with his clients." The district court terminated Attorney Hicks' appointment for K.L. and appointed successor counsel.

¶38 On that same date, Attorney Hicks was also scheduled to appear on behalf of client F.W., whom Attorney Hicks had been representing since September 2008. Since the beginning of 2012 F.W. had sent three letters to the Eastern District complaining that Attorney Hicks had not been responding to his requests for information and to discuss his upcoming sentencing hearing. In one such letter, F.W. requested that new counsel be appointed to replace Attorney Hicks due to his inattentiveness. On September 6, 2012, when Attorney Hicks failed to appear for K.L.'s hearing, the district court also removed him from representing F.W. and appointed successor counsel for F.W.

20

¶39 Several weeks after Attorney Hicks was removed from representing K.L. and F.W., the chief judge of the Eastern District entered an order removing Attorney Hicks from the list of attorneys eligible to receive appointments to represent indigent defendants in the Eastern District.

¶40 When the OLR notified Attorney Hicks of its investigation of his conduct in these matters in October 2012, Attorney Hicks initially responded by asserting that he was working on compiling the necessary documents and information, that he had "limited time to work on the grievances," and that he would try to complete his work on the responses as soon as he could. He did not, however, submit a response until February 26, 2013, after this court had imposed the second temporary suspension of his license due to his failure to cooperate with the OLR's investigations. When the OLR requested additional information, Attorney Hicks again failed to respond.

¶41 The referee determined that the OLR had failed to prove by clear, satisfactory, and convincing evidence that Attorney Hicks had violated SCR 20:1.16(d)[11] by failing to file

---

[11] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

motions to withdraw from representing K.L. and F.W. The referee did conclude, however, that the OLR had adequately proven two counts of failing to provide timely responses to the OLR, in violation of SCR 22.03(2) and (6), which are enforced via SCR 20:8.4(h).

Representation of Q.W.

¶42 In March 2012 Attorney Hicks was appointed to represent Q.W. in a criminal case pending in the Milwaukee County circuit court. Over the next approximately eleven months, Attorney Hicks sent only two letters to Q.W. One letter advised Q.W. of Attorney Hicks' appointment. The second letter responded to one of Q.W.'s concerns regarding the evidence against him. Attorney Hicks, however, failed to respond to four letters that Q.W. sent to him, failed to send specific information that Q.W. had requested, and failed to keep him informed of developments in his case, all of which resulted in Q.W. not knowing the status of his case by February 2013.

¶43 In addition, during the time that Attorney Hicks represented Q.W., his license to practice law was twice temporarily suspended due to his failure to cooperate with OLR investigations concerning other matters. Attorney Hicks failed to notify Q.W. of either temporary suspension. He also failed to notify the court and opposing counsel of the temporary suspensions. In fact, during the second temporary suspension Attorney Hicks participated in a hearing on a motion filed by Q.W. seeking to terminate Attorney Hicks' representation and to obtain new counsel. At no time during the hearing did Attorney

22

Hicks indicate that his license was then suspended. Ultimately, unaware of Attorney Hicks' license status, the circuit court denied Q.W.'s motion and kept Attorney Hicks on Q.W.'s case.

¶44 Attorney Hicks again failed to respond to the OLR's request for a response to the grievance that Q.W. subsequently filed.

¶45 The referee concluded that the OLR had proven five counts of misconduct regarding Attorney Hicks' representation of Q.W. and his response to the OLR's investigation. Attorney Hicks violated SCRs 20:1.4(a)(2), (3), and (4) and 20:1.4(b) by failing to properly communicate with Q.W. regarding the status of his case, developments in his case, and the means by which Attorney Hicks intended to defend him. Attorney Hicks' failure to notify Q.W. of his two temporary license suspensions constituted a violation of SCRs 22.26(1)(a) and (b) and 20:3.4(c). Similarly, Attorney Hicks' failure to notify the court and opposing counsel of those same license suspensions also violated SCRs 22.26(1)(c) and 20:3.4(c). When Attorney Hicks appeared on Q.W.'s behalf while his license to practice law in Wisconsin was suspended, he violated SCRs 22.26(2) and 20:3.4(c). Finally, Attorney Hicks' failure to submit a timely response to Q.W.'s grievance violated SCR 22.03(2) and (6), which are enforced via SCR 20:8.4(h).

Grievance Investigations Regarding M.W. and T.T.

¶46 Attorney Hicks was appointed to represent M.W. and T.T. in their respective cases. The referee's findings did not involve Attorney Hicks' representations of those two

23

individuals, but rather focused on Attorney Hicks' failure to respond to their grievances. The referee concluded that by failing to submit timely responses to their grievances and doing so only after the court had temporarily suspended his license, Attorney Hicks had violated SCR 22.03(2) and (6), which are enforced via SCR 20:8.4(h).

Conduct Following Second Temporary Suspension

¶47 Finally, the referee addressed a series of alleged violations stemming from Attorney Hicks' conduct following the second temporary suspension of his license on February 12, 2013. By this time, Attorney Hicks had already been through the process of having his license temporarily suspended and obtaining the reinstatement of his license. One requirement imposed on an attorney whose license is suspended, even on a temporary basis, is to submit an affidavit to the OLR listing the clients involved in pending matters at the time of the suspension and demonstrating the attorney's compliance with the suspension order and applicable rules, which would include providing proper notice to clients, opposing counsel, and courts. SCR 22.26(1)(e).[12] On March 6, 2013, Attorney Hicks

---

[12] SCR 22.26(1)(e) provides that, on or before the effective date of a license suspension, an attorney whose license is suspended shall:

   Within 25 days after the effective date of suspension or revocation, file with the director an affidavit showing all of the following:

   (i) Full compliance with the provisions of the suspension or revocation order and with the rules and

(continued)

24

filed an affidavit pursuant to that rule, which he himself purported to notarize, that claimed that he had mailed written notice of his temporary suspension to all of his clients, notified the SPD, and notified each court in which he had a pending case. He included a list of 14 clients that he asserted showed "all clients and pending court matters."

¶48 Attorney Hicks' affidavit was false in multiple respects. He had not provided proper notice to all of his clients and to opposing counsel. He also had not notified a number of judges before whom he had pending cases that his license had been suspended. He also failed to list at least nine pending cases in which he was counsel.

¶49 In addition, during his temporary suspension, Attorney Hicks appeared in court of behalf of clients on at least 12 occasions. He did not advise those courts that he was ineligible to appear at that time.

¶50 When the OLR asked Attorney Hicks for information regarding his compliance with the post-suspension obligations imposed by SCR 22.26, he again failed to respond.

procedures regarding the closing of the attorney's practice.

(ii) A list of all jurisdictions, including state, federal and administrative bodies, before which the attorney is admitted to practice.

(iii) A list of clients in all pending matters and a list of all matters pending before any court or administrative agency, together with the case number of each matter.

¶51 The referee concluded that Attorney Hicks' post-suspension conduct and his affidavit supported six counts of misconduct. On two counts, the referee concluded that Attorney Hicks had violated SCR 20:8.4(c)—once for purporting to notarize his own affidavit and once for making multiple false statements of fact within that affidavit. The referee also found that by failing to notify his clients of his temporary suspension, Attorney Hicks had violated SCRs 22.26(1)(a) and (b) and 20:3.4(c). Similarly, by failing to provide notice to both the applicable courts and opposing counsel, Attorney Hicks violated SCRs 22.26(1)(c) and 20:3.4(c). Attorney Hicks' repeated appearances in court on behalf of clients during his temporary suspension violated SCRs 22.26(2) and 20:3.4(c). Further, Attorney Hicks' failure to respond to the OLR's inquiries again violated SCR 22.03(2) and (6), which are enforced via SCR 20:8.4(h).

¶52 Thus, in total the referee found violations on 35[13] separate counts involving 12 client representations. Three counts were withdrawn by the OLR. On four other counts and on part of a fifth count, the referee concluded that the OLR had not satisfied its burden of proof.

¶53 The referee commented that there were "several disturbing patterns" in Attorney Hicks' misconduct. First,

---

[13] On one of those counts, the referee did find that Attorney Hicks had committed only part of the misconduct alleged by the OLR.

Attorney Hicks failed to engage in the necessary communication with his clients. He would often send initial letters advising them of his appointment, but then would repeatedly ignore letters and telephone calls from those clients, resulting in a failure to advise the clients of his strategy or to answer their questions and concerns. The referee rejected Attorney Hicks' excuse that he was too busy with jury trials and a high case load to communicate with his clients. While he may indeed have been forced by economic circumstances to carry a large case load, the referee indicated that he still must comply with his ethical obligation to share information with and answer inquiries from his clients.

¶54 The second disturbing pattern noted by the referee was Attorney Hicks' disregard for his obligation to provide timely responses to the OLR. Indeed, the referee noted that Attorney Hicks generally waited for his license to be temporarily suspended before submitting a response. The referee noted that he asked Attorney Hicks for an explanation as to his failure to promptly respond and that Attorney Hicks "had no good explanation."

¶55 The third disturbing pattern was Attorney Hicks' repeated disregard of this court's rules regarding temporary license suspensions. He blatantly continued to represent clients and to appear in court as if nothing had changed. He did not notify his clients, opposing counsel or the courts that his license had been suspended.

¶56 The referee indicated he was at a loss to explain this conduct of Attorney Hicks, who otherwise appeared to be an intelligent and competent attorney. Nonetheless, the referee agreed with the OLR that Attorney Hicks' repeated and willful disregard of his clients, his intentional refusal to respond to the OLR, his intentional and repeated practice of law after his license had been suspended, and his repetition of misconduct that led to the 2012 public reprimand warranted a lengthy suspension. Ultimately, the referee recommended that Attorney Hicks' license to practice law in Wisconsin be suspended for a period of two years.

¶57 After reviewing this matter and in light of the lack of any argument from Attorney Hicks to the contrary, we find no basis to conclude that the referee's findings of fact are clearly erroneous, and we therefore adopt them. We further agree with the referee that those detailed findings support legal conclusions that Attorney Hicks engaged in 35 counts of professional misconduct.

¶58 The issue then becomes what is the appropriate discipline that is warranted by this misconduct. In light of the pattern of misconduct that Attorney Hicks has exhibited and his disregard for both his vulnerable clients and his obligations as an officer of the court, we determine that a two-year suspension of his license is required to impress upon him the seriousness of his misconduct. See In re Disciplinary Proceedings Against Lucius, 2008 WI 12, 307 Wis. 2d 255, 744 N.W.2d 605 (imposing two-year suspension on attorney found

28

to have lacked diligence and failed to communicate in representing multiple indigent criminal defendants).

¶59 We next turn to the issue of costs. The referee recommended that the court impose the full costs of this proceeding on Attorney Hicks. Our general policy is to do so, and we see no reason to divert from that policy in this case, especially where Attorney Hicks has not challenged the OLR's statement of costs.

¶60 Finally, we do not impose any restitution obligation on Attorney Hicks. The OLR has not sought restitution with respect to any of Attorney Hicks' clients. See SCR 21.16(1m)(em) and (2m)(a)1 (the court may impose restitution in instances of misappropriation or misapplication of funds).

¶61 IT IS ORDERED that the motion filed on behalf of the Office of Lawyer Regulation to dismiss the notice of appeal filed by Attorney Michael J. Hicks is denied, but due to the failure of Michael J. Hicks to file an opening brief, this matter has been considered by the court on a summary basis without the benefit of briefs.

¶62 IT IS FURTHER ORDERED that the license of Michael J. Hicks to practice law in Wisconsin is suspended for a period of two years, effective March 18, 2016.

¶63 IT IS FURTHER ORDERED that Michael J. Hicks shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶64 IT IS FURTHER ORDERED that within 60 days of the date of this order, Michael J. Hicks shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶65 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.29(4)(c).