In the Matter of Disciplinary Proceedings Against
James R. Lucius, Attorney at Law:

Office of Lawyer Regulation,
Complainant,

v.

James R. Lucius, Respondent.

Supreme Court

*No. 2007AP1746–D.—Decided February 15, 2008.*

2008 WI 12

(Also reported in 744 N.W.2d 605.)

¶ 1. PER CURIAM. We review a referee's report and recommendation concluding that Attorney James R. Lucius engaged in professional misconduct and recommending that his license to practice law in Wisconsin be suspended for a period of two years. The referee also recommended that Attorney Lucius pay the costs of the proceeding and that conditions be imposed upon his resumption of the practice of law following his suspension.

¶ 2. We conclude that the referee's findings of fact are supported by satisfactory and convincing evidence. We also concur with the referee's conclusions of law. We further determine that the seriousness of Attorney Lucius's misconduct warrants the suspension of his

license to practice law for two years. We further agree with the referee's recommendation that conditions should be imposed upon Attorney Lucius's resumption of the practice of law following his suspension, and we concur that the costs of this proceeding, which are $2,575.61 as of October 30, 2007, should be assessed against him.

¶ 3. Attorney Lucius was admitted to practice law in Wisconsin in 1982 and practiced in Greenfield. On May 29, 2007, Attorney Lucius's license to practice law in Wisconsin was suspended for his failure to comply with continuing legal education (CLE) reporting requirements. His license remains suspended. He has not previously been disciplined.

¶ 4. On July 30, 2007, the Office of Lawyer Regulation (OLR) filed a complaint alleging ten counts of misconduct with respect to Attorney Lucius's handling of six client matters. All of the client matters involved Attorney Lucius's representation of criminal defendants in postconviction/appellate matters.

¶ 5. On September 5, 2007, Attorney Lucius sent a letter to the clerk of this court indicating that he did not intend to contest the matter and did not intend to resume the practice of law at any time in the future. On September 29, 2007, Attorney Lucius and the OLR entered into a stipulation in which Attorney Lucius stipulated to all of the allegations set forth in the OLR's complaint. The stipulation stated that Attorney Lucius waived his right to a contested hearing before a referee.

¶ 6. The Honorable Dennis Flynn was appointed referee in the matter. The referee's report and recommendation was filed on October 12, 2007. The referee approved and accepted the parties' stipulation and

257

found that the OLR had proved by clear and convincing evidence all of the counts of misconduct set forth in the complaint.

¶ 7. The first client matter detailed in the OLR's complaint involved Attorney Lucius's handling of post-conviction matters for J.L. The state public defender (SPD) appointed Attorney Lucius to represent J.L. in June 2004. Attorney Lucius appeared at a *Machner*[1] hearing with J.L. on May 26, 2005. Following the hearing, the circuit court denied J.L.'s postconviction motion. The following day, Attorney Lucius sent J.L. a letter indicating that future appellate proceedings would be without arguable merit. The letter advised that J.L. must choose one of three options: (1) have Attorney Lucius file a no-merit report, (2) have Attorney Lucius close the file without an appeal, or (3) have Attorney Lucius close the file and allow J.L. to proceed pro se or with another attorney retained at J.L.'s expense. In mid-June 2005 J.L. sent Attorney Lucius a letter requesting that he file a no-merit report.

¶ 8. On July 7, 2005, Attorney Lucius acknowledged that J.L. had requested him to file a no-merit report. He outlined the arguments he would make in the no-merit report and informed J.L. he had received the *Machner* hearing transcript. He calculated August 15, 2005, as the deadline for filing the no-merit report. On or about July 21, 2005, J.L. sent Attorney Lucius another letter asking him to file a no-merit report and also asking for copies of transcripts. Attorney Lucius did not file a no-merit report prior to August 15, 2005. When J.L. discovered the no-merit report had not been filed, he complained to First Assistant SPD Patricia

---

[1] *State v. Machner,* 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

Flood (Flood). Flood forwarded a copy of J.L.'s complaint letter to Attorney Lucius and asked him to respond to J.L.s concerns directly. On September 24, 2005, Attorney Lucius wrote to J.L. saying he had never received a letter after July 7, 2005, indicating that J.L. wanted to continue with appellate proceedings.

¶ 9. In September 2005 Flood told Attorney Lucius that J.L. wanted him to file a no-merit report. Attorney Lucius advised Flood he would seek an extension of the deadline for filing the no-merit report and then would file the no-merit report. On December 30, 2005, Attorney Lucius filed a motion to extend the deadline for filing the no-merit report. On January 6, 2006, the court of appeals ordered that the deadline for filing a no-merit report and no-merit notice of appeal be extended to February 15, 2006.

¶ 10. On January 25, 2006, Attorney Lucius filed the no-merit report under cover of a letter saying, "One copy of this Report along with all copies of transcripts and the court record are being served on the Defendant by copy of this letter." On or about February 6, 2006, J.L. advised the court of appeals that he had not yet received all of the transcripts from Attorney Lucius and did not have sufficient time to respond to the no-merit report. The court of appeals directed Attorney Lucius to certify that he had sent the materials required by Wis. Stat. § Rule 809.32(1)(d) to J.L. Attorney Lucius indicated to the court of appeals that all copies of transcripts and the court record were served on January 25, 2006.

¶ 11. On March 27, 2006, the court of appeals issued a memorandum and order indicating that it appeared from the court's electronic records that a transcript of J.L.'s postconviction hearing of May 2005 was not filed in the circuit court until March 23, 2006.

259

The court of appeals directed Attorney Lucius to send a copy of that transcript to J.L. and to certify to the court within ten days that he had done so. Attorney Lucius failed to respond to the court's order. The court of appeals issued another order reminding Attorney Lucius that he was required to serve a copy of the transcript on J.L. and gave him an additional ten days to comply. Attorney Lucius did not comply.

¶ 12. On June 2, 2006, the court of appeals issued an order directing the clerk to send a copy of the supplemental transcript directly to J.L. On July 7, 2006, the court of appeals issued a memorandum and order indicating it appeared that a portion of the transcript had not yet been ordered concerning the postconviction hearing held on May 26, 2005. The court questioned how Attorney Lucius could properly prepare the no-merit report without noting that this transcript was missing. Attorney Lucius admitted he had filed the no-merit report two months before he received the transcript.

¶ 13. The OLR's complaint alleged and the referee found that in his handling of J.L.'s case, Attorney Lucius failed to act with reasonable diligence and promptness in representing a client, in violation of former SCR 20:1.3,[2]

---

[2] Effective July 1, 2007, substantial changes were made to the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, SCR Chapter 20. *See* S.Ct. Order No. 04–07, 2007 WI 4, 293 Wis. 2d xv; and S.Ct. Order No. 06–04, 2007 WI 48, 297 Wis. 2d xlvii. Because the conduct underlying this case arose prior to July 1, 2007, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2007.

Former SCR 20:1.3 provides that a lawyer shall "act with reasonable diligence and promptness in representing a client."

and knowingly disobeyed an obligation under the rules of a tribunal, in violation of SCR 20:3.4(c).[3]

¶ 14. The second client matter detailed in the OLR's complaint concerned Attorney Lucius's representation of L.R. In February 2005 the SPD appointed Attorney Lucius to represent L.R. in a postconviction matter. On or about February 14, 2005, Attorney Lucius ordered transcripts relating to the case but did not advise L.R. of this fact until March 2. On or about March 7, 2005, L.R. wrote to Attorney Lucius to ask about the status of his case and raise issues he wanted Attorney Lucius to pursue. On March 10, 2005, Attorney Lucius wrote to L.R. that the court reporters had until April 14, 2005, to provide the transcripts. Attorney Lucius advised L.R. that when he reviewed the transcripts he would keep in mind the issues L.R. had raised in his March 7 letter.

¶ 15. On April 10, 2005, Attorney Lucius wrote to L.R. that a transcript of a preliminary hearing was missing and he asked whether L.R. wanted Attorney Lucius to proceed without the transcript. L.R. wrote letters to Attorney Lucius after receiving the April 10 letter, but Attorney Lucius failed to respond. On August 22, 2005, L.R. wrote to the SPD to complain that Attorney Lucius had failed to respond to any of L.R.'s letters, and that Attorney Lucius had not met with L.R. in person or called him on the telephone. On or about August 25, 2005, SPD Attorney Manager Kenneth Lund (Lund) forwarded a copy of L.R.'s complaint letter to Attorney Lucius and asked him to respond in ten days.

---

[3] Former 20:3.4(c) states that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

¶ 16. On September 12, 2005, Attorney Lucius wrote to L.R., stating in pertinent part that Attorney Lucius had never received a response from L.R. addressing the matters Attorney Lucius had raised in his April 10, 2005, letter. On December 30, 2005, Attorney Lucius filed in the court of appeals a motion for an extension of time to file defendant's notice of appeal or motion for postconviction relief relating to L.R.'s case. Attorney Lucius did not forward a copy of this document to L.R. or make L.R. aware of its existence. On January 25, 2006, Attorney Lucius mailed L.R. copies of a motion for postconviction relief and supporting brief. Attorney Lucius filed the motion and brief on February 17, 2006, without consulting with L.R.

¶ 17. On March 3, 2006, L.R. wrote to Lund indicating he had received Attorney Lucius's motion and found it "as well as could be expected" for an attorney who had never met one-on-one with his client. On March 17 L.R. wrote to Lund complaining that the brief Attorney Lucius had filed was "so basic and incomplete I can't see any court buying into it." The state filed its brief in April 2006. Attorney Lucius filed a reply brief on May 22, 2006, without any prior consultation with L.R. On May 25, 2006, Attorney Lucius forwarded a copy of the state's brief and Attorney Lucius's reply brief to L.R.

¶ 18. On July 28, 2006, Attorney Lucius met in person with L.R. This was the first occasion that Attorney Lucius had any in-person contact with L.R. On August 1, 2006, a *Machner* hearing was held in L.R.'s case. Attorney Lucius appeared at the hearing with L.R. At the conclusion of the hearing, the circuit court denied L.R.'s ineffective assistance of trial counsel claim. Attorney Lucius was permitted to withdraw from L.R.'s case on November 3, 2006.

¶ 19. The OLR's complaint alleged and the referee found that by failing to communicate with L.R. regarding the status of the postconviction motion, Attorney Lucius failed to keep L.R. reasonably informed about the status of a matter, in violation of SCR 20:1.4(a).[4]

¶ 20. The third client matter detailed in OLR's complaint involved Attorney Lucius's representation of M.A. In September 2005 the SPD appointed Attorney Lucius to represent M.A. in a postconviction matter. In November 2005 Attorney Lucius requested the trial court extend the time for him to review M.A.'s case from October 25 to December 31, 2005, and notify the court of appeals of the deadline extension. The trial court granted the requests. On December 9, 2005, the court of appeals extended the deadline for the trial court to decide M.A.'s postconviction motion to February 15, 2006.

¶ 21. On May 25, 2006, the court of appeals issued a memorandum indicating it appeared the trial court had not decided M.A.'s postconviction motion. The court of appeals also noted that the status of Attorney Lucius's representation of M.A. was unclear. The court ordered Attorney Lucius to provide it with a letter status report by June 16, 2006, advising what his current understanding was concerning the status of his representation of M.A. and the proceedings in the circuit court. The court of appeals also stated that if an extension was necessary to keep M.A.'s postconviction process ongoing and timely, Attorney Lucius should request it. Attorney Lucius did not request an extension.

---

[4] Former SCR 20:1.4(a) provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

¶ 22. On June 21, 2006, the trial court received a motion from Attorney Lucius to withdraw from M.A.'s case. On June 24, 2006, Attorney Lucius sent a status report to the court of appeals indicating that M.A. and Attorney Lucius disagreed on certain issues, and that a motion hearing was scheduled in the trial court for July 17, 2006, concerning Attorney Lucius's motion to withdraw from the case.

¶ 23. On August 14, 2006, the court of appeals issued a memorandum and order stating that contrary to its earlier suggestion, Attorney Lucius had not filed a motion for an extension and had apparently withdrawn from representation without doing so. The court of appeals, on its own motion, granted an extension of time.

¶ 24. The OLR's complaint alleged and the referee found that by failing to timely file a written status report with the court of appeals and by failing to request an extension to keep M.A.'s postconviction process ongoing and timely, Attorney Lucius failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.

¶ 25. The fourth client matter detailed in the OLR's complaint involved Attorney Lucius's representation of F.G. In April and May 2004 F.G. hired Attorney Lucius to represent him in two postconviction matters, one arising out of a Milwaukee County case and another arising out of a Waukesha County case. Attorney Lucius represented to F.G. that he would have motions ready for F.G.'s review by late September 2004. Attorney Lucius failed to follow through on this promise. On or about November 1, 2004, F.G. called Attorney Lucius about the status of the cases. Attorney Lucius advised F.G. that he would have a motion done within the next few weeks.

¶ 26. On December 1, 2004, F.G. wrote to Attorney Lucius expressing concern that Attorney Lucius had not proceeded with either case. F.G. requested that Attorney Lucius transfer the Milwaukee County case and a portion of the fees he had paid to Attorney Michael Backes. Attorney Lucius did not comply with this request.

¶ 27. On March 26, 2005, Attorney Lucius sent F.G. copies of a postconviction motion and brief relating to the Milwaukee County case. On April 12, 2005, Attorney Lucius met with F.G. at the Waupun Correctional Institution. F.G. expressed dissatisfaction with the brief Attorney Lucius drafted and told Attorney Lucius he did not want the brief filed as written. Attorney Lucius never filed the brief in the Milwaukee County case.

¶ 28. On September 19, 2005, a *Machner* hearing was held in F.G.'s Waukesha County case. At the close of the hearing, the court indicated that Attorney Lucius had three weeks from receipt of the *Machner* hearing transcripts and other transcripts to file a brief. The state would then have three weeks for rebuttal, and Attorney Lucius would have two weeks to file a reply brief after which the case would be scheduled for an oral decision. Attorney Lucius never filed any post-*Machner* hearing briefs in the Waukesha County case.

¶ 29. On February 12, 2006, F.G. wrote a letter to Attorney Lucius indicating he had not heard from Attorney Lucius since the *Machner* hearing and requesting a status update. Attorney Lucius failed to reply. On February 24 and March 23, 2006, F.G. wrote directly to the Waukesha County clerk of court asking for a case status update. On March 23, 2006, F.G. wrote to Attorney Lucius asking for a status update. Attorney Lucius failed to respond.

¶ 30. On April 14, 2006, the Waukesha County court sent a notice setting the case for a hearing on May 5, 2006. On April 16, 2006, F.G. wrote to Attorney Lucius saying he had not heard from Attorney Lucius in six months and had no idea what had happened with his case. F.G. was produced in Waukesha County circuit court for the May 5, 2006, hearing but Attorney Lucius did not appear. The matter was rescheduled to May 31, 2006, but Attorney Lucius again did not appear. The circuit court found Attorney Lucius in contempt and ordered termination of his representation of F.G.

¶ 31. The OLR's complaint alleged and the referee found that Attorney Lucius failed to act with reasonable diligence and promptness in representing F.G., in violation of SCR 20:1.3, and failed to keep F.G. reasonably informed about the status of a matter and promptly comply with reasonable requests for information, in violation of SCR 20:1.4(a).

¶ 32. The fifth client matter detailed in the OLR's complaint involved Attorney Lucius's representation of D.C. In October 2005 the SPD appointed Attorney Lucius to represent D.C. in a postconviction proceeding. On November 20, 2005, Attorney Lucius sent D.C. a letter requesting transcripts or a statement that D.C. did not possess any transcripts. D.C. obtained the transcripts and instructed members of his family to drop them off at Attorney Lucius's office. Thereafter, D.C.'s family tried to telephone Attorney Lucius and make arrangements to drop off the transcripts at Attorney Lucius's office on several occasions, to no avail.

¶ 33. On February 25, 2006, Attorney Lucius informed D.C. that he had not yet received the transcripts. Attorney Lucius also said he had received a note from C.C., a member of D.C.'s family, and had received a number of phone calls, but that when he tried to

266

return the calls no one answered. Attorney Lucius asked D.C. to mail the transcripts. D.C. wrote a letter to the SPD saying he did not want to mail the transcripts because he was afraid Attorney Lucius might not get them "due to the fact that I know his office or what ever it is, is an apartment with other unknown people living there." On May 26, 2006, SPD Flood sent Attorney Lucius a letter requesting that he arrange to have D.C.'s family drop off the transcripts at the SPD office so Attorney Lucius could pick them up there. Attorney Lucius picked up the D.C. transcripts from the SPD on July 27, 2006. On November 6, 2006, Attorney Lucius filed a motion to withdraw as D.C.'s counsel and sent D.C. a letter saying that as of December 1, 2006, Attorney Lucius would be discontinuing the practice of law.

¶ 34. The OLR's complaint alleged and the referee found that Attorney Lucius failed to act with reasonable diligence and promptness in representing D.C., in violation of SCR 20:1.3.

¶ 35. The final client matter detailed in the OLR's complaint involved Attorney Lucius's representation of E.T. In August 2004 the SPD appointed Attorney Lucius to represent E.T. in postconviction proceedings. While the proceedings were pending, E.T.'s probation was revoked and judgments of revocation were entered in February 2005. Attorney Lucius was then appointed to pursue postconviction relief from the sentences imposed after revocation.

¶ 36. Between February 2005 and October 2005 Attorney Lucius failed to inform E.T. of the status of the postconviction motion in the revocation matters or of the status of the appeals of the underlying convictions. In February and July 2005 E.T. sent letters to Attorney Lucius providing him with E.T.'s new address and

267

informing Attorney Lucius of some research E.T. had done. Attorney Lucius failed to respond.

¶ 37. Attorney Lucius drafted a letter dated October 18, 2005, regarding a postconviction motion concerning the revocation of E.T.'s probation. The letter indicated that a challenge to the imposed sentence would lack appellate merit. Attorney Lucius's letter advised that E.T. must choose one of three options: (1) have Attorney Lucius file a no-merit report, (2) have Attorney Lucius close the file without an appeal, or (3) have Attorney Lucius close the file and allow E.T. to proceed pro se or with another attorney retained at E.T.'s expense.

¶ 38. E.T. denied receiving the October 18, 2005, letter until February 2006. On January 27, 2006, Attorney Lucius informed the court of appeals that he had calculated March 13, 2006, as the deadline to file a no-merit report or appeal in E.T.'s revocation matters. Attorney Lucius did not file a no-merit report or appeal prior to March 13, 2006.

¶ 39. On or about February 1, 2006, Attorney Lucius had telephone contact with E.T. Other than the disputed October 18, 2005, letter, this was the only contact Attorney Lucius had with E.T. since the revocation hearing in February 2005. On or about March 3, 2006, E.T. sent a letter to Attorney Lucius requesting legal advice concerning the consequences of E.T. agreeing to have Attorney Lucius file a no-merit report. Attorney Lucius failed to respond.

¶ 40. On or about March 28, 2006, E.T. sent Attorney Lucius a letter requesting information about the outcome of the March 13, 2006, deadline and copies of motions or briefs Attorney Lucius had filed on E.T.'s behalf. Attorney Lucius failed to respond.

¶ 41. On May 11, 2006, the court of appeals noted that it had heard nothing further about the status of the appeal since January 2006, and it ordered Attorney Lucius to dismiss the appeals, provide a written status report, or take other appropriate action by May 31, 2006. Attorney Lucius failed to respond to the order. On June 12, 2006, the court of appeals established a new deadline of June 19, 2006, for Attorney Lucius to comply. Attorney Lucius failed to respond.

¶ 42. On June 26, 2006, the court of appeals noted that Attorney Lucius had failed to respond to its previous orders. Noting that a contempt hearing would consume considerable resources and that neither the court nor E.T. would have great confidence in an attorney's work product produced under the threat of contempt, the court strongly encouraged the SPD to appoint new counsel for E.T. On July 13, 2006, the court of appeals acknowledged that Attorney Lucius had filed a status report, and it ordered Attorney Lucius to file briefs on E.T.'s appeals by August 25, 2006.

¶ 43. The OLR's complaint alleged and the referee found that Attorney Lucius failed to act with reasonable diligence and promptness in representing E.T., in violation of SCR 20:1.3; failed to keep E.T. reasonably informed about the status of a matter and promptly comply with requests for information, in violation of SCR 20:1.4(a); and failed to explain a matter to E.T. to the extent reasonably necessary to permit E.T. to make informed decisions regarding the representation, in violation of SCR 20:1.4(b).[5]

[5] Former SCR 20:1.4 states that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

¶ 44. Although OLR's complaint sought a six-month suspension of Attorney Lucius's license to practice law in Wisconsin, the referee recommended a minimum suspension of two years. The referee pointed out that each of the aggrieved clients has been convicted of crimes and faced consequences that include the loss of freedom due to incarceration. The referee noted that all but one of the clients have issues concerning indigency. The referee also noted that there are multiple acts of misconduct, many of them repetitive.

¶ 45. In addition to recommending a minimum suspension of two years, the referee recommended that Attorney Lucius be ordered to pay all of the costs of this proceeding and that, as a condition of any future reinstatement, he achieve good standing with respect to his obligations regarding CLE as a lawyer in this state. The referee specifically recommended that in the event Attorney Lucius intends to practice criminal law, he should obtain a minimum of 20 approved CLE credits, and he should obtain a minimum of 40 credits of legal education credits in the following areas relating to legal ethics: 15 credits of general legal ethics, 10 credits relating to the specific obligations a lawyer has toward a client, 10 credits regarding the obligation a lawyer has to comply with orders entered by trial and appellate courts, and 5 credits relating to the obligation a lawyer has toward a client in terms of timely discharge.

¶ 46. No appeal of the referee's report and recommendation was filed.

■

¶ 47. This court will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it

sees fit regardless of the referee's recommendation. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 626. Attorney Lucius has stipulated to all of the allegations in the OLR's complaint.

¶ 48. The referee's findings of fact in this case have not been shown to be clearly erroneous, and we adopt them. We also agree with the referee's conclusions of law. We further agree with the referee's recommendation for a two-year suspension of Attorney Lucius's license to practice law in Wisconsin. As the referee pointed out, all of Attorney Lucius's clients were defendants in criminal cases, and all but one of the clients were found to be indigent. Indigent, incarcerated persons are a vulnerable group that lacks significant options in terms of alternative representation. Under the circumstances of this case, the OLR's initial request for a six-month license suspension is inadequate. The referee's recommendation for a two-year suspension is more commensurate with the scope of the misconduct.

¶ 49. We further agree with the referee's recommendation that Attorney Lucius pay the full costs of this proceeding. We also agree with the referee's recommendation that conditions be imposed upon Attorney Lucius's practice of law following his suspension. We agree with the referee that in the event Attorney Lucius seeks the reinstatement of his license and intends to practice criminal law, he should obtain a minimum of 20 approved CLE credits in the criminal law area. In addition, we agree that in the event he seeks license reinstatement, Attorney Lucius should obtain a minimum of 40 credits of legal education in the ethics area.

¶ 50. IT IS ORDERED that the license of James R. Lucius to practice law in Wisconsin is suspended for a period of two years, effective the date of this order.

¶ 51. IT IS FURTHER ORDERED that within 60 days of the date of this order, James R. Lucius pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of James R. Lucius to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 52. IT IS FURTHER ORDERED that, to the extent he has not already done so, James R. Lucius comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 53. IT IS FURTHER ORDERED that in the event James R. Lucius seeks reinstatement of his license to practice law, the following conditions shall be imposed upon his reinstatement:

A. In the event James R. Lucius intends to practice criminal law, he shall obtain a minimum of 20 approved CLE credits in the criminal law area; and

B. James R. Lucius shall obtain a minimum of 40 credits of legal education in the area of legal ethics.